UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
RODERICK REYES,

       Plaintiff,

  - against -          Case No. 23-cv-3315 (LAP)

DAVID DINELLO, JOHN HAMMER and ROBERT
BENTIVEGNA,

       Defendants.

------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS DINELLO AND HAMMER'S MOTION TO DISMISS THE COMPLAINT

            LETITIA JAMES
            Attorney General
            State of New York
            <u>Attorney for Defendants</u>
            <u>Dinello and Hammer</u>
            28 Liberty Street
            New York, New York 10005
            (212) 416-8663

JOSHUA M. MITTS
Assistant Attorney General
<u>of Counsel</u>

## TABLE OF AUTHORITIES

**Cases**                                                                                            **Page(s)**

2002 Lawrence R. Buchalter Alaska Trust v. Phila. Fin. Life Assur. Co,
    96 F. Supp. 3d 182, 200 (S.D.N.Y. 2015) ...............................................................................5

Abbas v. Dixon,
    480 F.3d 636, 642 (2d Cir. 2007)............................................................................................9

Allen v. Koenigsmann, et al,
    No. 19-cv-8173 (LAP) (S.D.N.Y. Sept. 2, 2019) ....................................................................9

American Pipe & Const. Co. v. Utah,
    414 U.S. 538 (1974).........................................................................................................9, 10

Anekwe v. Bernstein,
    21 CV 11108, 2023 WL 44533659 (S.D.N.Y. July 13, 2023)................................................6

Ashcroft v. Iqbal,
    556 U.S. 662, 677 (2009).........................................................................................................4

Bell Atl. Corp. v. Twombly,
    550 U.S. 544, 570 (2007),...............................................................................................4, 5, 7

Doe v. State Univ. of N.Y. Purchase Coll.,
    617 F.Supp.3d 195, 208 (S.D.N.Y. 2022), .........................................................................4, 5

Darby v. Greenman,
    14 F.4th 124, 129 (2d Cir 2021), ............................................................................................8

Harlow v. Fitzgerald,
    457 U.S. 800 (1982)............................................................................................................5, 6

Hogan v. Fischer,
    738 F.3d 509, 517 (2d Cir. 2013)............................................................................................5

Lucente v. County of Suffolk,
    980 F.3d 284, 308 (2020)........................................................................................................5

Jones v. City of New York,
    571 F.Supp.3d 118, 128 (S.D.N.Y. 2021) ..............................................................................5

Nghiem v. U.S. Dept. of Veterans Affairs,
    451 F. Supp. 2d 599, 602 – 03 (S.D.N.Y. 2006), aff'd, 323 F. App'x 16 (2d
    Cir. 2009) ..................................................................................................................5

State of Utah v. American Pipe & Const. Co,
    473 F.2d 580, 584 (9th Cir. 1973) ............................................................................6

**RULES**

Fed. R. Civ. P. 12(b)(6).......................................................................................... 1, 4, 6

42 U.S.C. § 1983 ....................................................................................................... 4, 5

**TABLE OF CONTENTS**

**Section**                                                       **Page**

**TABLE OF AUTHORITIES** ............................................................................................... ii

**PRELIMINARY STATEMENT** ..........................................................................................1

**PLAINTIFF'S ALLEGATIONS** .........................................................................................1

**STANDARDS OF REVIEW** ..............................................................................................4

**ARGUMENT** ......................................................................................................................5

    **POINT 1. PLAINTIFF'S CLAIMS ARE TIME BARRED** .................................................5

        A.  Plaintiff's Claims for Denials Before August 2018 Are Time-Barred. ........................6

        B.  Plaintiff Does Not Allege Any Claims Against Defendant Hammer for Conduct After August 2018.. ..........................................................................................7

        C.  Plaintiff's Claim Against Defendant Dinello Regarding the August 2017 Denial Is Time-Barred.. ....................................................................................8

    **POINT II. PLAINTIFF'S CLAIMS ARE NOT TOLLED BY THE DENIAL OF CLASS CERTIFICATION.** .........................................................................7

**CONCLUSION** ...................................................................................................................7

## PRELIMINARY STATEMENT

Defendants Dr. David S. Dinello and Dr. John Hammer, both Regional Medical Directors ("RMD") with the New York State Department of Corrections and Community Supervision ("DOCCS"), by their attorney, Letitia James, Attorney General of the State of New York, respectfully submit this memorandum of law in support of their motion to dismiss the Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because the claims against Defendants Dinello and Hammer are barred by the applicable statute of limitations.

## PLAINTIFF'S ALLEGATIONS[1]

Plaintiff Roderick Reyes is currently incarcerated at Green Haven Correctional Facility ("CF"). Compl. ¶¶ 5, 288. Plaintiff does not allege when he was first incarcerated, however, he claims that he received medical attention from DOCCS staff as early as 1998, when he was treated for sickle cell anemia with folic acid, vitamins, and Percocet while not in crisis. Id. at ¶¶ 290–93. In October of 2001, it was recommended that he be given a protocol of aggressive fluids and pain medication to reduce the number of crises he was having per year as a result of his sickle cell anemia. Id. at ¶ 294. In 2002, Plaintiff was accused of hoarding OxyContin, and he was switched to a liquid administration by a doctor at Walsh RMU. Id. at ¶ 295. However, he was switched back to OxyContin. Id at ¶¶ 296–97. From 2003 to 2010, Dr Dinello was treating Plaintiff at Cayuga CF, and filled the requests for OxyContin. Id. at ¶ 298. In March, 2010, Plaintiff was released to parole. Id. at ¶ 299.

In 2015, DOCCS changed their practice and began withholding prescriptions flagged as having abuse potential under the new Medications with Abuse Potential ("MWAP") Policy. Id. at pp. 1–2. This new DOCCS policy was allegedly created by Defendant Dinello and implemented

---

[1] The Complaint's factual allegations are assumed to be true for the purposes of this motion only.

by several DOCCS administrators including Defendant Hammer, with the stated goal of reducing certain classes of prescriptions. Id. at pp. 1–2. These classes of prescriptions included opioids and neuromodulating medications such as Plaintiff's prescriptions. Id at 2. In order for a DOCCS medical provider to prescribe an MWAP, the Policy required the approval of an RMD, such as Defendants Dinello and Hammer. Id.

In April of 2015, Plaintiff was returned to DOCCS custody and housed at Green Haven CF. Id. at ¶ 300. Within the month, Plaintiff suffered "a crisis" and was brought to the hospital. Id. at ¶ 302. Between June 2015 and June 2017, Plaintiff received various medications including, but not limited to morphine, Motrin, ands MS Contin, for pain management. Id. at ¶¶ 303–25.

On June 1, 2017, the MWAP Policy was promulgated. Id. at ¶ 327. On June 7, 2017, an MWAP request was made for Plaintiff for MS Contin. Id. Defendant Hammer asked that the form be resubmitted, and once it was resubmitted, he asked the doctor to confirm Plaintiff's medical condition and the appropriateness of the medication requested, but still approved the request. See id. Plaintiff was taken to the hospital on June 19, 2017. Id. at ¶ 329. When he returned, another MWAP request was sent to Defendant Hammer. Id. at ¶ 330. Defendant Hammer suggested a dose reduction and a PRN—or as needed—dosage in the future. Id. Notably, the medication was approved, but Plaintiff wrote to the facility health services director out of concern it would be discontinued in the future. Id. at ¶ 331. He was told that his prescription would need to be reviewed monthly. Id.

In August of 2017, an MWAP request was submitted by Dr. Ashong. Id. at ¶ 332. The request was reviewed by Defendant Dinello, who denied it stating "[t]he use of opiates will need to be reserved for acute exacerbations of sickle cell disease or end-stage hospice care." Id. Plaintiff appealed the denial to facility health services director and was told that the long-term use of

narcotics was controversial, and indicated that in the situation of a crisis, that narcotics would likely be implemented on a short-term basis. Id.

At some point in 2017, Dr. Silver approached of Defendant Dinello advocating for the medication to be reinstated. Id. at ¶ 337. Defendant Dinello stated that Plaintiff had a substance abuse problem from prior treatment in Cayuga CF. Id. at ¶ 338. In response, Dr. Silver began weaning Plaintiff off of his medication. Id. at ¶ 340. In August of 2017, Plaintiff had a crisis and was brought to the hospital. Id. at ¶ 341. Upon his return, Dr. Silver continued to taper Plaintiff's narcotic medication, but approached Defendant Hammer regarding approval of an MWAP request. See id. at ¶ 342. Defendant Hammer denied the request. Id. at ¶ 343.

In October of 2017, Plaintiff was back in the hospital with a crisis. Id. at ¶ 347 He was discharged with a recommendation 60mg of MS Contin every 12 hours. Id. When he returned, Dr. Silver again approached Defendant Hammer about Plaintiff's medications. Id. Defendant Hammer refused the prescriptions. Id. at ¶ 348.

In December of 2017, Plaintiff was returned to the hospital. Id. at ¶ 349. He was released with a note that he needed to continue pain management. Id. In January, he saw another doctor who recommended that Plaintiff not be weaned off of his medication. Id. Again, in January Plaintiff went to the hospital, and another request was made for MS Contin. Id. at ¶ at 352. Defendant Hammer denied the request.

In May 2018, Dr. Hammer spoke with a treating hematologist/oncologist regarding Plaintiff's treatment. Id. at  ¶ 363. After discussion, Defendant Hammer agreed to prescribe MS Contin at 45mg, twice a day. Id. Plaintiff did not have another crisis until August 19, 2018. Id. at ¶ at 368. Plaintiff had another crisis in November, which resulted in an MWAP request for 60 mg of MS Contin. Id. at ¶ 370. It was approved for 30 days. Id.

In April of 2019, Plaintiff's treat physician recommended an increase back to 60 mg of MS Contin. Id. at ¶ at 374. It was once again recommended in June. Id. In June, Dr. Silver submitted another MWAP was submitted, and approved, with a suggestion for tapering. Id. at ¶ 375. In July of 2019, Plaintiff had another crisis. Id. at ¶ 377. He was discharged with 45mg of MS Contin. Id. at ¶ 377. He was then brought back to the hospital, and discharged with 60mg of Morphine every twelve hours. Id. at ¶ 379. However, after he was transferred to Green Haven infirmary on September 4, 2019, he was switched to Percocet. Id. at ¶ 380. The next day, Dr. Silver prescribed 45mg of Morphine, twice a day, and submitted an MWAP request. Id. It was approved by Defendant Hammer. Id.

Plaintiff went in and out of the hospital between November 2019 and October 2020. Id. at ¶¶ 380–85. During this time, his treatment was not increased. Id. However, in November of 2020, an MWAP was approved for 60mg of MS Contin every twelve hours. Id. at ¶ 388. Notably, he still suffered crises. Id.

In April of 2023, almost 6 years after Plaintiff's first MWAP request for Neurontin was denied, Plaintiff commenced this action against Defendant Dinello, Defendant Hammer and others claiming deliberate indifference to medical care under 42 U.S.C. § 1983. Id. at ¶¶ 390–95.

**STANDARDS OF REVIEW**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the Plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556-57). The pleading requirements under Rule 8 of the

Federal Rules of Civil Procedure "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id. Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Where a Plaintiff has failed to "nudge [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Id. at 570. A motion to dismiss on statute of limitations grounds "generally is treated as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6)." 2002 Lawrence R. Buchalter Alaska Trust v. Phila. Fin. Life Assur. Co, 96 F. Supp. 3d 182, 200 (S.D.N.Y. 2015) (quoting Nghiem v. U.S. Dept. of Veterans Affairs, 451 F. Supp. 2d 599, 602 – 03 (S.D.N.Y. 2006), aff'd, 323 F. App'x 16 (2d Cir. 2009)).

## ARGUMENT

### POINT I

### PLAINTIFF'S CLAIMS ARE TIME-BARRED

Actions brought pursuant to 42 U.S.C. § 1983 "borrow the state statute of limitations for personal injury actions." Owens v. Okure, 488 U.S. 235, 250-51 (1989). 1983 actions in New York state are therefore "subject to a three-year statute of limitations." See Hogan v. Fischer, 738 F.3d 509, 517 (2d Cir. 2013); Lucente v. County of Suffolk, 980 F.3d 284, 308 (2020) ("[t]he statute of limitations for § 1983 actions arising in New York is three years"); N.Y.C.P.L.R. § 214. Accrual of a 1983 action occurs "when the plaintiff knows or has reason to know of the injury which is the basis of the action." Jones v. City of New York, 571 F.Supp.3d 118, 128 (S.D.N.Y. 2021) (internal citations omitted). For the reasons that follow, many of Plaintiff's claims are time-barred because Plaintiff did not file the instant action until well after the statute of limitations had

expired. Furthermore, with respect to claims alleged against Defendant Hammer for conduct within the statute of limitations, Plaintiff failed to plead a cause of action.

### A. Plaintiff's Claims for Denials Before August 2018 Are Time-Barred.

Plaintiff's claims against Defendant Hammer before August 2018 should be dismissed as time-barred by the three-year statute of limitations for 1983 actions.

Reading the complaint in the light most favorable to the Plaintiff and as broadly as possible, Plaintiff alleges that Defendant Hammer fully or partially denied MWAP requests in June 2017, September 2017, October 2017, January 2018, and May 2018. See Compl. At ¶¶ 327, 342, 347, 352, 363. Plaintiff makes clear throughout his Complaint that the failure to receive this medication caused him severe pain. See e.g., ¶ 353 ("… Many such patients are dependent on opioids by necessity. It is how they survive."). Accordingly, Plaintiff had reason to know of the latest injury allegedly inflicted upon him by Defendant Hammer in May 2018, three years from which would have been May 2021. However, Plaintiff did not file this action until April 20, 2023, or about 5 years after his alleged claims accrued.

Even assuming, *arguendo*, Plaintiff's claim was tolled pursuant to Executive Order 202.8 due to the Coronavirus Pandemic, the claim still expired in January 2022. Courts in the Second Circuit "have held that Executive Order 202.8 tolls the statute of limitations period in Section 1983 claims brought in federal court in New York." Anekwe v. Bernstein, 21 CV 11108, 2023 WL 44533659 (S.D.N.Y. July 13, 2023) (citing Doe v. State Univ. of N.Y. Purchase Coll., 617 F.Supp.3d 195, 208 (S.D.N.Y. 2022)). The Executive Order provided tolling from March 20, 2020, through November 3, 2020, totaling an additional 228 days. Id. Plaintiff commenced the instant action in April 2023, or about fifteen months past this latest expiration date. Accordingly, Plaintiff's claims against Defendant Hammer should be dismissed as untimely.

**B. Plaintiff Does Not Allege Any Claims Against Defendant Hammer for Conduct After August 2018.**

Plaintiff does not allege that Defendant Hammer engaged in any conduct after August 2018 which would result in a cognizable cause of action. See Compl. at ¶¶ 366–89. In fact, Plaintiff alleges that Defendant Hammer approved every request that was brought before him. Id. at ¶ 376. The *only* alleged failure that Plaintiff accuses Defendant Hammer of is failing to intervene when Plaintiff was brought to the hospital between December 2019 through March 2020. Id. at ¶ 382. As such, the only actions plead by Plaintiff related Defendant Hammer's treatment is a broad allegation that he failed to prescribe effective treatment despite not being Plaintiff's physician. Id. at ¶ 380, 382. Specifically, Plaintiff alleges that "Dr. Hammer had to review and approve each and every one of Mr. Reyes' hospitalizations, yet, despite the fact that he knew Dr. Asif recommended an increase in Mr. Reyes' pain control, Defendant Hammer did nothing to adjust it." Id. ¶ 382. Notably, Plaintiff does not allege what the recommendations were after each of those visits, despite alleging the recommendation for every other prior visit. Id. at ¶ 382; c.f. id. at ¶¶ 288–380.

Plaintiff must plead factual content against Defendant Hammer which would allow for the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556-57). Plaintiff is required to allege more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Plaintiff's allegations that Defendant Hammer did not intervene in Plaintiff's treatment at the DOCCS facility despite knowing of Plaintiff's hospitalizations and that Dr. Asif recommended an increase in pain control does not raise more than a speculative level of relief.

Plaintiff's complaint is that treatment by DOCCS was not the same as recommended by the physician at the private hospital. Id. Not only is it unclear whether this recommendation came

after every visit, but even if it did, "mere medical malpractice[2] is not tantamount to deliberate indifference" absent a showing of "conscious disregard of a substantial risk of serious harm." Darby v. Greenman, 14 F.4th 124, 129 (2d Cir 2021). Alleging that the treatment was not adequate, alone, is not enough to say that Defendant Hammer "acted with deliberate indifference under the Fourteenth Amendment." Id. Indeed, Plaintiff alleges that Defendant Hammer approved the MWAP requests that Dr. Silver had given him after May 2018. See Compl. at ¶¶ 366, 380. Defendant Hammer's actions, as alleged, do not rise to a level of deliberate indifference for medical care, and therefore, must be dismissed.

### C. Plaintiff's Claim Against Defendant Dinello Regarding the August 2017 Denial Is Time-Barred.

Plaintiff's claims against Defendant Dinello before August 2018 must be dismissed as time-barred by the three-year statute of limitations for 1983 actions.

Plaintiff's allegation concerning Defendant Dinello's alleged failure to authorize medication which occurred in August 2017 occurred when Defendant Dinello allegedly rejected Plaintiff's MWAP request for narcotics. See Compl., ¶¶ 332–40. Plaintiff had reason to know of the injury allegedly inflicted upon him by Defendant Dinello in August 2017, three years from which would have been August 2020. However, Plaintiff did not file this action until April 20, 2023, or about 5.5 years after his alleged claims accrued.

Even assuming, *arguendo*, Plaintiff's claim was tolled pursuant to Executive Order 202.8 due to the Coronavirus Pandemic, the claim still expired in April 2021. Plaintiff commenced the instant action on April 20, 2023, or about two years past this latest expiration date. Accordingly, Plaintiff's claim against Defendant Dinello should be dismissed as untimely.

---

[2] Please note that while Defendant Hammer does not concede that his actions rose to the level of medical malpractice, his actions, as alleged by Plaintiff, could only rise to that level.

## POINT II

## PLAINTIFF'S CLAIMS ARE NOT TOLLED BY THE DENIAL OF CLASS CERTIFICATION.

The Complaint does not allege any tolling available to Plaintiff that would further extend the statute of limitations. For instance, Plaintiff would not be eligible for equitable tolling because he does not state that he was induced by fraud, misrepresentation, or deception to delay his filing. See Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007) (holding that it is the plaintiff's burden to demonstrate that he is entitled to equitable tolling). Nor does the Complaint assert any tolling based on the putative liability class action filed at Allen v. Koenigsmann, et al., No. 19-cv-8173 (LAP) (S.D.N.Y. Sept. 2, 2019) ("Allen"). While American Pipe & Const. Co. v. Utah provided for the suspension of the applicable statute of limitations under certain, limited circumstances upon commencement of a class action, those circumstances do not apply here. 414 U.S. 538 (1974).

In American Pipe, the Supreme Court held that "where class action status has been denied solely because of failure to demonstrate that 'the class is so numerous that joinder of all members is impracticable,' the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." Id. at 552–3. The Supreme Court took care, however, to differentiate such class actions from ones akin to Allen, by stating that the "Court of Appeals was careful to note" that the class action "was denied not for failure of the complaint to state a claim on behalf of the members . . . not for lack of standing of the representative, or for reasons of bad faith or frivolity." Id. at 553 (quoting State of Utah v. American Pipe & Const. Co., 473 F.2d 580, 584 (9th Cir. 1973)). In contrast, the class action in Allen was not certified because the Court found that the representative plaintiffs lacked standing. See Allen v. Koenigsmann, et al., No. 19-cv-8173 (LAP), 2023 WL 2731733 at *2 (S.D.N.Y. Mar. 31, 2023). Because the putative class in

Allen was denied as a result of the class representatives lack of standing, American Pipe tolling does not apply.

## **CONCLUSION**

For the foregoing reason, Defendants Dinello and Hammer respectfully requests that the Court dismiss the Complaint as to Hammer, and dismiss any cause of action as to Dinello for the denial of medication in August, 2017, with prejudice.

Dated:     October 16, 2023
           New York, New York

                                        Respectfully submitted,

                                        LETITIA JAMES
                                        Attorney General State of New York
                                        *Attorney for Defendants Dinello and Hammer*

By:     */s/ Joshua M. Mitts*
        Joshua M. Mitts
        Assistant Attorney General
        28 Liberty Street, 18th Floor
        New York, New York 10005
        (212) 416-8663
        Joshua.Mitts@ag.ny.gov